DISTRICT OF OREGON, ss:          AFFIDAVIT OF CHRISTOPHER SCHINNERER

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Christopher, L. Schinnerer, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Trooper with the Oregon State Police (OSP) and have been since September 2004.   My current assignment is a Task Force Officer (TFO) with the Federal Bureau of Investigations (FBI), and have been since June 2016. I am assigned to the Portland Oregon Division of the Joint Terrorism Task Force (JTTF). I am trained in techniques and methods used to investigate violations of Federal law and threats to national security. My investigative experience includes threat assessment management, cases involving threats to human life, threats to use violence, or the threat of violence to, in support of, or to counter a particular ideology or grievance. I am trained in techniques and methods used in crowd control and civil disorder events and the methods and tactics used by individuals engaging in criminal acts associated with such events. I am familiar with the use of electronic devices to communicate and engage in the conduct of illegal activity.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Malik Fard Muhammad ("Muhammad") for violations of Title 26 U.S.C. § 5861(d) (receipt or possession of unregistered firearms), 18 U.S.C. § 231(a)(3) (civil disorder – obstruction of law enforcement), and 18 U.S.C. § 844(h)(1) and (2) (explosive materials – commission of a federal felony).

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.   The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from

other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

4.    Title 26 U.S.C. § 5861(d) provides that it is illegal to receive or possess a firearm which is not registered in the National Firearms Registration and Transfer Record (NFRTR). The term "firearm" is defined under § 5845(a)(1)-(8) and includes any destructive device. Section 5845(f) defines a destructive device as: (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled.

5.    Title 18 U.S.C. § 231(a)(3) provides that it is illegal to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely

affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.   The term "civil disorder" is defined under 18 U.S.C. § 232(1) as any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual.

6.      Title 18 U.S.C. § 844(h) provides that it is illegal (1) to use fire or an explosive to commit any felony which may be prosecuted in a court of the United States, or (2) to carry an explosive during the commission of any felony which may be prosecuted in a court of the United States. Section 844(j), in relevant part, defines an explosive as a device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

## Statement of Probable Cause

### Background of Civil Disorders

7.      The death of George Floyd on May 25, 2020, in Minneapolis Minnesota resulted in nationwide protests and civil disorder events. Throughout the summer of 2020, multiple protests took place in Portland, Oregon. The protests have, at times, included violence, civil disorder, looting, arson and assaults on law enforcement personnel. Protests and civil disorders that occurred between the dates of September 21-23, 2020 in Portland, Oregon were generally anti-government and/or anti-law enforcement in nature.

8.      On September 21, 2020, during a civil disorder event near the Penumbra Kelly Building located at 4735 East Burnside Street, Portland, a crowd of approximately 100 people,

along with support vehicles, gathered and blocked the street near this location. During the course

of this civil disorder, a Portland Police Bureau (PPB) vehicle equipped with a Long Range

Acoustic Device (LRAD) provided trespass announcements to the crowd. An improvised

"Molotov cocktail"[1] device was thrown towards uniformed officers and landed near the PPB

sound vehicle but did not ignite and remained intact.

     9.     On September 22, 2020 during a civil disorder event near the Penumbra Kelly

Building located at 4735 East Burnside Street, Portland, a crowd of approximately 75 people

gathered and blocked the street near this location.   Due to the street blockage, public bus

transportation was disrupted at this location.   PPB officers provided announcements to the

crowd via LRAD, due to projectiles thrown towards uniformed officers and the Penumbra Kelly

Building.

     10.     On September 23, 2020 during a civil disorder event near a Portland Police

Bureau Precinct located at 1111 Southwest 2nd Ave., Portland, a crowd of approximately 200

people gathered and blocked the street near this location.   PPB provided audible commands to

the crowd to disperse via LRAD, due to projectiles, high velocity marbles, and rocks being

thrown at uniformed officers and the precinct.   At approximately 10:22 pm, PPB declared a riot

due to the continued throwing of projectiles at the precinct that caused windows to break, a fire

being started in the area and other criminal behavior.   Due to fires being started by the crowd

---

1 Your affiant understands that, by design, a Molotov cocktail is comprised of a breakable
container in which a flammable agent is present.  In addition, a Molotov cocktail includes a wick
or other ignition means which is placed in or otherwise attached to the container.  To make a
Molotov cocktail explode, one ignites the wick, and then the container of flammable agent can
then be thrown or otherwise mechanically broken.  The wick then ignites the flammable agent,
starting a fire.

public transportation was disrupted as a result of a fire zone exclusion in the area.

**Molotov Cocktail Incidents on September 21 and 23, 2020**

11.     On September 21, 2020, law enforcement units conducted surveillance of criminal

activity during protests that occurred in the area of the Multnomah County Sheriff's Office

'Penumbra Kelly Building' located at 4735 East Burnside St., Portland, Oregon.   At

approximately 11:00 p.m., surveillance units observed an individual (depicted below) light on

fire and throw an object.



12.     The Portland Fire and Rescue (PFR) personnel responded to the Penumbra Kelly

Building and recovered a suspected incendiary/destructive device, also known as a "Molotov

cocktail."   The Molotov cocktail landed on the upper parking lot of the Penumbra Kelly

property approximately ten to fifteen feet away from multiple law enforcement officers stationed

in a sound truck.   The sound truck was equipped with police markings, lights, siren, and a long-

range acoustic device (LRAD) system.   The sound truck was parked within the Penumbra Kelly

property upper parking lot during the majority of the events of September 21-22.   The Molotov

cocktail consisted of a yellow glass bottle or growler[2] with a "Goodwill" sticker on the bottom (as depicted below), a cloth wick, and a suspected ignitable liquid, yellowish green in color. Alcohol Tobacco and Firearms (ATF) special agents assisted with the device recovery which had not functioned and was still fully intact.





13.     Using information from the Goodwill sticker, it was determined the bottle was purchased from a Goodwill store located in McMinnville, Oregon.   A Multnomah County grand

---

2 A growler is a glass, ceramic, or stainless-steel bottle generally used to transport draft beer. They are commonly sold at breweries and brewpubs to sell take-out craft beer.

jury subpoena was obtained by the PPB for records from the McMinnville, Oregon Goodwill

store, which ATF agents assisted in serving.   The subpoena was used to determine who had

made the purchase and whether any other items had been purchased along with it.   Video

surveillance was also obtained via the subpoena, which showed the transaction and the

purchasers.   Goodwill provided the sales receipt for the September 4, 2020 purchase, along with

a computer hard drive containing surveillance footage for the McMinnville, Oregon Goodwill

store which depicted the transaction.

14.     Law enforcement officers reviewed portions of the Goodwill video from

September 4, 2020 and observed two individuals in the video that were associated with the

purchase of the growler (depicted below).   The first appeared to be a black male (later identified

as Muhammad), and the second appeared to be a white female (later identified as Kristin

McGuire, hereinafter "McGuire").   The video footage and receipt showed Muhammad and

McGuire purchased approximately 14 growlers or bottles in the same transaction, to include

yellow, orange, and red growlers, a clear bottle, and an amber bottle (see below).   An assortment

of baseball bats was also purchased.   Additionally, a brown or tan messenger bag appeared to be

purchased by McGuire.   The name on the credit card used for the purchases was "Kristen G.

McGuire."

///

///

///

///

///



15.     A baseball bat with a Goodwill sticker was collected by PPB officers in the area

of SE 117th Ave./SE Stark St. in Portland, Oregon, on September 5, 2020.   Goodwill confirmed

that the baseball bat was also purchased in the same transaction as the yellow growler from

September 4, 2020.

16.     On September 23, 2020, a subject threw a Molotov cocktail that landed in front of

a line of PPB officers near the Multnomah County Justice Center (MCJC) (near the intersection

of SW 2nd Ave. and SW Main St., Portland, Oregon) and subsequently shattered, creating a

large volume of flame that ignited the uniform of a PPB officer.   Another officer utilized a fire

extinguisher to stop additional burning to the officer's clothing.   Open source media

photographs show the Molotov cocktail thrower to be carrying a tan/yellow canvas-type cross-

body bag and wearing a pink gas mask (depicted below).





///

///

///

///





17.     Evidence collected (depicted below) by law enforcement from the shattered

Molotov cocktail on September 23, 2020, resembled a portion of the yellow growler-type bottle

recovered from the September 21, 2020, Molotov cocktail at the Penumbra Kelly Building.

ATF ultimately took possession of the evidence from the September 23, 2020 Molotov cocktail.

No latent fingerprints were obtained but ignitable liquids were identified as being present.



18.     I conferred with SA Cynthia Chang (ATF) on December 12, 2020.   She

confirmed that based on a search of ATF's National Firearms Registration and Transfer Record

(NFRTR), Muhammad had no destructive devices registered to him.

19.     Investigators identified the Facebook accounts for both Muhammad and McGuire,

who were in a romantic relationship, and had both traveled from Indianapolis, Indiana to

Portland, Oregon around the end of July 2020.   They observed activity on Muhammad's

Facebook that appeared to express general support for Anti-Government/Anti-Authority Violent

Extremist (AG/AAVE) ideology and related groups.

20.     Investigators also identified open source social media information indicating

Muhammad traveled to Louisville, Kentucky the weekend of August 14-16, 2020.   He did so

with approximately at least five additional individuals for the purpose of meeting with two other

like-minded groups in Louisville, Kentucky to conduct firearms and tactical training in support of their AG/AAVE ideology.

21.    FBI also identified the following posts by Muhammad which indicated additional AG/AAVE ideologies held by Muhammad.   On August 28, 2020, Muhammad posted a photograph depicting recent events that occurred in Kenosha, Wisconsin and captioned it "Kill cops. Shoot back. We say no justice no peace we mean NO PEACE."   On August 31, 2020, open source information posted to Muhammad's publicly accessible Facebook account indicated he was located in Portland, Oregon participating in First Amendment protected protests against police brutality.   That same date, Muhammad re-posted a video of alleged police brutality where the subject fights back and captioned it "Fuck 12 shoot back."   On September 1, 2020, Muhammad referenced a news article regarding Chicago gangs forming a pact to execute cops who draw weapons and captured the article "shoot, every opportunity you have."

22.    Further review of Muhammad's Facebook profile showed a photograph of Muhammad and McGuire kneeling with their fists in the air (see below image-left). Muhammad has a rifle in his right hand, positioned with the muzzle towards the ground. Additionally, slung around his body is the same type of brown or tan shoulder bag the suspect who threw the Molotov cocktail on September 23, 2020, was apparently wearing.   The following is a comparison of those images:

///

///

///

///



23.     On October 11, 2020, PPB arrested Muhammad for multiple criminal violations related to the ongoing civil unrest in downtown Portland, Oregon.   On October 12, 2020, PPB obtained three state search warrants for the backpack Muhammad had been in possession of the night of his arrest, a dark blue Ford F250 bearing Indiana temporary license L402485 which Muhammad and McGuire had been driving, and a parked RV trailer in which they had been staying in.   ATF assisted in the execution and searches related to these warrants.

24.     The blue Ford F-250 pick-up truck was towed to the PPB impound lot in Portland, Oregon prior to it being searched.   Evidence recovered from the Ford F-250 pick-up truck included the receipt for the September 4, 2020, Goodwill purchase in McMinnville, Oregon, where a number of glass "growlers" were purchased, one of which was the yellow glass container for the Molotov cocktail recovered on September 21, 2020 at the Penumbra Kelly Building (referenced in paragraph 11).   Investigators also located several black baseball style hats, respirators and filters, a black COVID-style mask with a fist on the front, a black cowboy hat, a pair of yellow/black 'Mechanix' gloves, a black plastic helmet, two tactical body armor-

type plates, and two road flares.   The COVID-style mask and cowboy hat appeared to be the items Muhammad was wearing during the Goodwill purchase captured on surveillance video.

25.    Law enforcement also recovered five gas containers with different types of suspected fuel inside.   ATF laboratory examination of the liquid from inside all five-gas containers confirmed that they all contained ignitable liquids, to include gasoline, ethanol, heavy petroleum distillates (HPDs), and fatty acid methyl esters (FAMEs).

26.    On January 25, 2021, pursuant to a federal DNA search warrant issued out of the Southern District of Indiana, Muhammad and McGuire reported to the Indianapolis Metropolitan Police Department to provide samples of their DNA collected via buccal swabs by Indianapolis ATF agents.   Their buccal swabs were entered into ATF evidence and subsequently sent to the ATF laboratory for analysis and comparison to other items of evidence recovered in this case.

27.    On March 18, 2021, ATF Special Agent Cynthia Chang received the official ATF DNA laboratory report that compared Muhammad and McGuire's known DNA samples/profiles against DNA discovered on the intact Molotov cocktail recovered from the Penumbra Kelly premises on September 21, 2020 (referenced in paragraph 12).   A 3-person mixture of both male and female DNA profiles was found specifically on the brown cloth wick that was stuffed into the neck of "growler" used to make the Molotov cocktail.   The report concluded that Muhammad and McGuire's DNA profiles make up the 3-person mixture with a probability of more than one in one trillion.[3]

---

[3] While this result may be regarded a s a statistical "match", DNA results are not specifically reported as "matches".   Instead, results are reported as a statistical probability. Muhammad and McGuire's known DNA profiles were not associated with any other items of evidence.

28.     On April 2, 2021, in Indianapolis, Indiana, I and PPB Det. Meredith Hooper interviewed McGuire subject to a Miranda rights advisement.   McGuire agreed to answer law enforcement questions.   During questioning, Det. Hooper showed McGuire a Facebook photo, which showed Muhammad wearing a specific tan satchel.   McGuire stated that the satchel was one that Muhammad wore often and that the Facebook photo was taken in Indiana.   Det. Hooper then showed McGuire a photograph (depicted below) taken of the suspect from the September 23, 2020, Molotov cocktail incident (at SW 2nd/SW Main).   Det. Hooper zoomed in on the photograph to focus on the bag the suspect was wearing.   Det. Hooper asked McGuire if that was the satchel she previously identified belonging to Muhammad, and she replied, "Yeah." Det. Hooper also asked McGuire whether she and Muhammad ever wore half masks with a rubber portion and filters at protests.   McGuire stated they did; the rubber was gray, and the filters were gray at first, but then changed to pink.



29.     Det. Hooper asked McGuire, based on her knowledge of what Muhammad generally wore to protests, whether she could identify him in a photograph; she answered, "Yes."

Det. Hooper showed McGuire the same photograph (depicted below) of the suspect from the September 23, 2020, Molotov cocktail incident (at SW 2nd/SW Main).   Det. Hooper asked her if she recognized this person to be Malik Muhammad.   McGuire stated she could recognize Muhammad in the photo, based on his cheekbones, and that the jacket worn by the individual in the photo was one she recognized they purchased on a shopping spree.

### Conclusion

30.     Based on the foregoing, I have probable cause to believe, and I do believe, that Malik Fard Muhammad (DOB: XX/XX/1997) illegally possessed destructive devices in the form of Molotov cocktails, on September 21 and 23, 2020, which were not registered in the National Firearms Registration and Transfer Record (NFRTR), in violation of Title 26 U.S.C. § 5861(d); that Muhammad intentionally obstructed, impeded, and interfered with law enforcement officers who were engaged in the lawful performance of their duties when Muhammad threw a Molotov cocktail at or near law enforcement officers engaged in the lawful performance of their official duties on September 21 and 23, 2020, where Muhammad's actions took place during a civil disorder that adversely affected interstate commerce in violation of 18 U.S.C. § 231(a)(3); and that Muhammad used an explosive, and/or carried an explosive, during the commission of a felony which may be prosecuted in a court of the United States (namely a violation of 18 U.S.C. § 231(a)(3)), in violation of Title 18 U.S.C. § 844(h)(1) and (2)).   I therefore request that the Court issue a criminal complaint and arrest warrant for Muhammad.

31.     Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Adam Delph, and AUSA Delph advised me that in his opinion the affidavit

and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

## **Request for Sealing**

32.     It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant.   I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may cause flight from prosecution, cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize an investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

_____

CHRISTOPHER SCHINNERER
Task Force Officer, FBI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at   11:31 a.m. xxxx/pxxx. on   May 28, 2021        .

*/s/ Youlee Yim You*
_____
HONORABLE YOULEE YIM YOU
United States Magistrate Judge