SCOTT ERIK ASPHAUG, OSB # 833674
Acting United States Attorney
District of Oregon
**ADAM E. DELPH, WSB #50312**
adam.delph@usdoj.gov
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:21-cr-00205-HZ** |
| **v.** | **UNITED STATES' MOTION FOR REVOCATION OF RELEASE ORDER AND FURTHER STAY OF RELEASE ORDER** |
| **MALIK FARD MUHAMMAD,** | |
| **Defendant.** | |

Defendant Malik Muhammad threw a Molotov cocktail that landed approximately fifteen feet from a police vehicle, putting multiple officers at risk of death or serious injury. Two days later, he threw the same type of incendiary device at a line of police officers; it burst into flames and caught an officer's pant leg on fire. Defendant was finally arrested after being involved in thousands of dollars in property damage to downtown Portland, supplying other rioters with baseball bats (which were also used to cause property damage), and fleeing from law enforcement

**United States' Motion for Revocation of Release Order and** **Page 1**
**Further Stay of Release Order**

with a firearm.  Subsequent searches of Muhammad's property revealed more firearms and

cannisters of an ignitable liquid.

## STATUS OF THE CASE

Muhammad was initially charged by federal complaint for receipt or possession of

unregistered firearms in violation of Title 26 U.S.C. § 5861(d), engaging in civil disorder and

obstructing of law enforcement in violation of 18 U.S.C. § 231(a)(3), and use of explosives to

commit a federal felony in violation 18 U.S.C. § 844(h)(1) and (2).  (ECF No. 1).  The government

filed a Motion for Detention on June 1, 2021.  (ECF No. 5).  Muhammad made his initial

appearance on June 1, 2021 and was detained pending a full detention hearing on June 2, 2021.

At the conclusion of the detention hearing, Magistrate Judge Russo entered an order

detaining Muhammad as a risk of flight and danger to the community.  (ECF No. 9).  On June 30,

2021, Muhammad was arraigned on a six-count indictment that generally mirrored the original

complaint, charging two counts of Civil Disorder in violation of 18 U.S.C. § 231(a)(3); two counts

of Using an Explosive to Commit a Felony in violation of 18 U.S.C. § 844(h)(1); and two counts of

Unlawful Possession of a Destructive Device in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871.

(ECF No. 14).  Muhammad also faces a state indictment alleging 26 felonies, including Attempted

Aggravated Murder, Attempted Murder 1, Unlawful Manufacture of an Explosive Device, Criminal

Mischief 1, Riot and Unlawful Possession of a Firearm.[1]

---

[1] Prior to Muhammad's federal arrest on May 28, 2021, the Multnomah County District
Attorney's Office filed a Motion to Deem Offenses Not Releasable Under ORS 135.240(4).
Muhammad was subsequently arrested on a federal warrant, so a state detention hearing was not
scheduled.  However, subsequent to Magistrate Judge Beckerman's release order, a motion hearing
has been scheduled for November 8, 2021.

On October 26, 2021, Muhammad filed a Motion for Review of Detention and Release on Pretrial Conditions.  (ECF No. 23).  Muhammad also submitted to the Court a Comprehensive Substance Abuse Assessment prepared by Daniel Steckler, dated August 6, 2021 (Attachment 1), and an interim forensic psychological evaluation of Muhammad prepared by Suzanne R. Best, Ph.D., dated October 8, 2021 (Attachment 2). The Government provided a response in opposition to defense's motion on October 27, 2021.  (ECF No. 25).  On October 28, 2021, Magistrate Judge Beckerman held a hearing for oral argument on the motion and granted the defense request for release, with specific conditions; the Court also granted the Government's unopposed oral motion to stay release, until Monday, November 1, 2021 (ECF No. 26), later extended to November 2, 2021.  (ECF No. 29).

The Government is aware that an inpatient bed (according to the most recent information from Pretrial Services) for Muhammad will not likely be available for another 1-2 weeks. However, the Government requests the Court further stay Magistrate Judge Beckerman's order of release, pending resolution of this motion.

Muhammad is still a danger to the community and a flight risk.  Muhammad repeatedly and intentionally jeopardized the lives of law enforcement officers, destroyed public property, and encouraged others to commit violence.  Muhammad's substance assessment and psychological evaluation do not provide an adequate basis for reconsideration of release, and he should remain detained.

/ / /

/ / /

/ / /

## FACTUAL BACKGROUND

Muhammad and his girlfriend traveled to the Portland Metro area from their home in Indianapolis, Indiana for the specific purpose of violently engaging in civil disorder; he was successful and now faces both federal and state charges.

On September 5, 2020, there was a large civil disturbance in east Portland, which included hundreds of people.  Demonstrators threw dangerous objects at the Police, including commercial grade fireworks, Molotov cocktails,[2] bottles, and other objects.  At least one demonstrator was seriously burned by a Molotov cocktail that was thrown in the direction of the police.  The event was declared a riot, and police made multiple arrests. Muhammad was present during this event and provided baseball bats to members of the crowd.

Following Muhammad's arrest in October 2020, law enforcement seized his cell phone and found messages where he bragged about providing baseball bats.  The cell phone also contained a shopping list including common ingredients used to make a Molotov cocktail.  The day after the violent demonstration, police located a discarded baseball bat with a Goodwill price tag in the area where the event occurred.  Police found the Goodwill store where it was purchased and surveillance videos and receipts revealed Muhammad and his girlfriend, Kristin McGuire, buying the bats and multiple "growler" bottles on September 4, 2020:

/ / /

/ / /

---

[2] By design, a Molotov cocktail is comprised of a breakable container in which a flammable agent is present.  In addition, a Molotov cocktail includes a wick or other ignition means which is placed in or otherwise attached to the container.  To make a Molotov cocktail explode, one ignites the wick, and then the container of flammable agent can then be thrown or otherwise mechanically broken.  The wick then ignites the flammable agent, starting a fire.

**United States' Motion for Revocation of Release Order and**                    **Page 4**
**Further Stay of Release Order**



On September 21, 2020, there was a large demonstration near the Multnomah County Sheriff's Office 'Penumbra Kelly Building'. At approximately 11:00 p.m., FBI surveillance units observed an individual (depicted below) light on fire and throw an object toward the Penumbra Kelly building property.

At the time, multiple PPB officers were stationed in a sound truck, equipped with police markings, lights, siren, and a long-range acoustic device system.[3] One officer observed a burning object flying through the air towards his vehicle. The object landed on the upper parking lot of the Penumbra Kelly property, approximately ten to fifteen feet away from the sound truck. The officer exited the vehicle and discovered a large yellow bottle that resembled a beer growler. The bottle had a burnt rag stuffed in the mouth of the bottle and contained a large amount of liquid. Portland Fire and Rescue (PFR) personnel responded and recovered the suspected incendiary/destructive

---

[3] The sound truck was parked within the Penumbra Kelly property upper parking lot during the majority of the demonstrations from September 21-22.

**United States' Motion for Revocation of Release Order and**                    **Page 5**
**Further Stay of Release Order**

device, also known as a Molotov cocktail.  A PPB Fire investigator tested the liquid inside, and it was found to be flammable.

The Molotov cocktail consisted of a yellow glass bottle or growler[4] with a "Goodwill" sticker on the bottom (depicted below), a cloth wick, and ignitable liquid, yellowish green in color. Alcohol Tobacco and Firearms (ATF) special agents assisted with the device recovery which was still fully intact.  It was later determined the bottle was one of the growlers purchased at Goodwill by Muhammad and McGuire on September 4, 2020:



ATF later compared DNA recovered from the growler to that of Muhammad and McGuire. A 3-person mixture of both male and female DNA profiles was found specifically on the brown cloth wick that was stuffed into the neck of growler used to make the Molotov cocktail.  The report concluded that Muhammad and McGuire's DNA profiles make up the 3-person mixture with a probability of more than one in one trillion.[5]

---

[4] A growler is a glass, ceramic, or stainless-steel bottle generally used to transport draft beer. They are commonly sold at breweries and brewpubs to sell take-out craft beer.

[5] While this result may be regarded a s a statistical "match", DNA results are not specifically reported as "matches".  Instead, results are reported as a statistical probability. Muhammad and McGuire's known DNA profiles were not associated with any other items of evidence.

**United States' Motion for Revocation of Release Order and**                                      **Page 6**
**Further Stay of Release Order**

On September 23, 2020, there was a large demonstration at the Multnomah County Justice

Center (MCJC).  During the demonstration, protesters set the building on fire and broke windows to

the building.  Police attempted to move the crowd away from the building.  When officers advanced

towards the crowd, an individual threw a Molotov cocktail in a large yellow growler that landed in

front of the officers.  It shattered and exploded into a large fireball when it hit the ground.  While

some officers were able to move out of the way, one officer was sprayed with fire and his lower leg

caught on fire for a brief moment.  Multiple videos show a male resembling the defendant throwing

the bottle and wearing a unique tan/golden satchel:

 

Muhammad has posted photos on Facebook wearing the same satchel:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



Law enforcement recovered a piece of the shattered Molotov cocktail; it looked like a

portion of the yellow growler-type bottle recovered from the September 21, 2020, Molotov cocktail

at the Penumbra Kelly Building:



No latent fingerprints were obtained from the piece, but ignitable liquids were identified as being

present.

On October 11, 2020, PPB officers were working in downtown Portland and monitoring a

protest involving approximately 250 people. During the protest, one officer reported that the group

began to heavily vandalize various businesses and parks in the city. In particular, the group tore

down statues, smashed out windows at the Oregon Historical Society, Portland State University,

Starbucks, Bank of America, and other area businesses.  Additionally, the group used chains and vehicles to rip down and vandalize statues of Abraham Lincoln and Theodore Roosevelt.

During the event, FBI agents in plain clothes observed Muhammad within the crowd. Muhammad was dressed in all black with a few small unique identifying details such as red and grey gloves.  He was also carrying a shield that read words to the effect of "abolish police."  Agents report that during the event, they observed Muhammad use a metal baton to smash out the windows of the Oregon Historical Society, Portland State University, and many other businesses.  Damages to these various buildings exceeded $40,000.

Law enforcement attempted to arrest Muhammad, but he fled.  Multiple officers chased after him; he tried to run behind some barrels before finally being arrested.  Muhammad had a loaded pistol magazine in his pocket.  Another officer recovered a loaded pistol behind the barrels Muhammad ran behind.  The pistol magazine located in Muhammad's pocket matched the pistol located behind the barrels.  The pistol and magazine located on Muhammad contained 30 rounds of 9 mm ammunition.

On October 12, 2020, PPB obtained three state search warrants for the backpack Muhammad had been in possession of the night of his arrest, a dark blue Ford F250 bearing Indiana temporary license L402485, which Muhammad and McGuire had been driving, and a parked RV trailer in which they had been staying in.  During the search of the travel trailer, police located multiple firearms including an AR-15 and shotguns.  Law enforcement then spoke with the owner of the AR-15 rifle, Adult Witness 1 (AW1).  AW1 explained that while living in Indiana, he met Muhammad in the months prior to his travel to Portland.  He explained that Muhammad was attempting to recruit people to engage in violent activities, including an armed forceful takeover of

**United States' Motion for Revocation of Release Order and**                                               **Page 9**
**Further Stay of Release Order**

a radio or television station.  AW1 described Muhammad as a communist revolutionary who was attempting to gather people with firearms to engage in acts of violence.

Law enforcement found the receipt for the September 4, 2020 Goodwill purchase in McMinnville, Oregon showing Muhammad and McGuire purchased a number of glass growlers in the truck.  Investigators also located several black baseball style hats, respirators and filters, a black COVID-style mask with a fist on the front, a black cowboy hat, a pair of yellow/black 'Mechanix' gloves, a black plastic helmet, two tactical body armor-type plates, and two road flares.  The COVID-style mask and cowboy hat appeared to be the items Muhammad was wearing during the Goodwill purchase captured on surveillance video.

Law enforcement also recovered five gas containers with different types of suspected fuel inside.  ATF laboratory examination of the liquid from inside all five-gas containers confirmed that they all contained ignitable liquids, to include gasoline, ethanol, heavy petroleum distillates (HPDs), and fatty acid methyl esters (FAMEs).

Muhammed's trip to Portland does not appear to be an isolated event; on his publicly available social media sites, he showed Anti-Government/Anti-Authority Violent Extremist (AG/AAVE) ideology.  Muhammad traveled to Louisville, Kentucky the weekend of August 14-16, 2020, with five other people to meet with groups in Louisville, Kentucky and to conduct firearms and tactical training in support of AG/AAVE ideology.  Other postings included a photograph depicting events that occurred in Kenosha, Wisconsin and captioned it "Kill cops. Shoot back. We say no justice no peace we mean NO PEACE."  A few days later, on Facebook he said he was in in Portland, Oregon, participating in First Amendment protected protests against police brutality.  That same date, Muhammad re-posted a video of alleged police brutality where the subject fights back

and captioned it "Fuck 12 shoot back."  The next day, Muhammad referenced a news article

regarding Chicago gangs forming a pact to execute cops who draw weapons and captured the article

"shoot, every opportunity you have."  Within a week, he was engaged in violent protests in

Portland.

**APPLICABLE LAW**

A.       **Standard of Review**

Review of a magistrate judge's release order is *de novo*.  *United States v. Koenig*, 912 F.2d

1190, 1192-93 (9th Cir. 1990).  However, the court "is not required to start over in every case, and

proceed as if the magistrate's decision and findings did not exist."  *Id.* at 1193.  Rather, the court

should "review the evidence before the magistrate and make its own independent determination

whether the magistrate's findings are correct, with no deference."  *Id.*

B.       **Rules of Evidence Do Not Apply at a Detention Hearing**

The Federal Rules of Evidence do not apply in detention proceedings.  Fed. R. Evid.

1101(d)(3); 18 U.S.C. § 3142(f).  Accordingly, both the government and the defense may present

evidence by proffer or hearsay.  *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see*

*also United States v. Bibbs*, 488 F. Supp. 2d 925, 925, 26 (N.D. Cal. 2007).

C.       **Standard and Burden**

Under the governing bail statute, 18 U.S.C. § 3142, the government bears the burden of

proving by a preponderance of the evidence that a defendant is a flight risk; community danger

requires clear and convincing proof.  *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir.

2015).  Four factors help guide release decisions: (1) the nature and circumstances of the offense;

(2) the weight of the evidence; (3) the nature and seriousness of the danger posed to the community; and (4) defendant's history and characteristics.  18 U.S.C. § 3142(g).

There is probable cause, evidenced by the grand jury's indictment, to believe that Muhammad violated 18 U.S.C. § 844(h)(1), which carries a 10-year mandatory minimum.  *See United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (holding that grand jury indictment is itself proof that probable cause exists to believe that a defendant committed the charged crimes). The severity of the punishment underscores the crimes' seriousness and also contributes to his risk of nonappearance.  *Santos-Flores*, 794 F.3d at 1092 (recognizing that the severity of the anticipated punishment favors detention).

## ARGUMENT

Muhammad engaged in violent rioting and threw incendiary devices at or near law enforcement officers on more than one occasion, which could have resulted in death or serious bodily injury.  He supplied rioters with baseball bats and engaged in destructive rioting that shook downtown Portland.  When confronted, he fled from law enforcement while carrying a firearm.  For his actions, Muhammad not only faces a federal indictment related to the unlawful use of explosives and for committing a civil disorder, he also faces attempted murder charges in the State of Oregon. The federal charges include a ten-year mandatory minimum, and the state charges carry potential Measure 11 sentences.  Muhammad's intent since he left Indiana has been clear—he wanted to commit violent acts against law enforcement and advocate others do so as well.  And when law enforcement attempted to apprehend him, he fled.  He put lives at risk and destroyed property all while heavily armed.  He is not only a danger, but also a flight risk.

Not only was Muhammad seen at the riots, he was seen purchasing the supplies to make the Molotov cocktails.  This was not a one-time act during a protest; Muhammad came to Portland—while heavily armed—with the intent to engage in violent activities.  And he did just that.  When police tried to stop him, he fled.

Muhammad's history and characteristics, as evidenced by his own words on social media and his actions in August and September, reveal a person driven to violence.  As a result, he now faces serious federal/state criminal charges and a significant sentence.  Muhammad is a danger and a flight risk; he put the entire community—a community he is not even part of—at risk while specifically targeting law enforcement.

The government presented nearly all of the above information to Magistrate Judge Russo at the first detention hearing.  At the conclusion of the first hearing, Magistrate Judge Russo ruled that Muhammad is a flight risk and a danger to the community, specifically determining that "[n]o condition or combination of conditions will reasonably assure the appearance of defendant as required" or "assure the safety of other persons and the community."  (ECF No. 9).  Magistrate Judge Russo based these conclusions not only on mental health and substance abuse concerns, but also due to the nature of the offense(s), arrest behavior, possession of weapons, violent behavior, and criminal history.  (ECF No. 9).

At the second hearing on October 28, 2021, Magistrate Judge Beckerman concluded that Muhammad's entanglements with substance abuse and other concerns did not represent a risk of flight.  She acknowledged the Government's concern for danger to the community, based on the seriousness of the charges and underlying factual allegations.  However, she ultimately decided that since Muhammad had apparently never undergone dual-diagnosis treatment before, such inpatient

**United States' Motion for Revocation of Release Order and Further Stay of Release Order**                                                              **Page 13**

treatment could reasonably assure the safety of other persons and the community.  She also

generally expressed that since Portland protests were not as frequent or aggravated as they were

previously, there is less risk that Muhammad would exacerbate further protests/riots in the future.

Magistrate Judge Beckerman granted Muhammad's request for release, pursuant to specific

conditions to be met prior to his release to an inpatient bed.

Release to a dual-diagnosis program, which is not secure, is not sufficient to protect the

community.  And the substance abuse assessment and interim psychological evaluation do not

change that analysis.  Neither included discussions with Muhammad about the facts underlying the

charged offenses or assessed the risk of repeat behavior.  But the substance abuse assessment did

indicate that Muhammad was still self-medicating and "ambivalent in changing his behavior."

(Attachment 1, Page 9).  The interim psychological assessment also noted that Muhammad

minimized his alcohol abuse (Attachment 2, Page 6), while painting a concerning picture as to his

"manic" states.

Muhammad explained that when he is manic, it can last for long periods of time; that he

went through a period of about three months last summer when he was in a consistent manic state.

(Attachment 2, Page 7).  He explained that when he enters this state, he feels "untouchable": "I

don't think anyone can take me.  I can't die."  (Attachment 2, Page 7).  Since the age of 15, he has

heard the voices of two or three men inside his head (which now return when he is manic), that give

"guidance" that is not always "positive or healthy."  (Attachment 2, Page 7).  If he does not do what

the voices tell him to do, the voices become louder, "incessant," and "won't leave him alone."

(Attachment 2, Page 7).  He struggles with anger and is just able to control it when he

is *not* manic.  (Attachment 2, Page 11).  Muhammad described himself as historically self-

destructive and reckless, particularly when manic; once the mania fades, he is anxious about the things he has done when he was manic.  (Attachment 2, Page 11).

Muhammad's admitted entanglements with substance abuse and existing mental health issues are of immediate concern upon release.  The proposed release plan is not a lock-down facility; defendant can simply walk away.  The fear of what will happen if defendant is at large in the community was—even before the evaluation and assessment were available— one of the primary reasons Magistrate Judge Russo cited in her detention decision.  (ECF No. 9).  Nothing has changed; in fact, the evaluations only cement the conclusion previously made that defendant is a danger to the community and risk of flight.  The availability of a dual-diagnosis program cannot ameliorate those concerns.

## CONCLUSION

Muhammad traveled to the District of Oregon to engage in violent rioting.  He caused extensive property damage and threatened the lives of multiple law enforcement officers.  When confronted, his impulse was to flee, firearm in-hand.

Malik Muhammad still poses a danger to the community and is a flight risk.  He should remain detained.

Dated: November 2, 2021

Respectfully submitted,

SCOTT ERIK ASPHAUG
Acting United States Attorney

s/ *Adam E. Delph*
ADAM E. DELPH
Assistant United States Attorney